IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02255-RM-NRN

KRISTOPHER HANCOCK,

Plaintiff,

v.

CIRBO, Captain,
PORSHA, Sargent,

Defendants.

**REPORT AND RECOMMENDATION ON**
**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**
**(DKT. #23)**

**N. Reid Neureiter**
**United State Magistrate Judge**

This case is before the Court pursuant to an Order (Dkt. #24) issued by Judge Raymond P. Moore referring Defendants Andra Cirbo and Derrick Porcher's[1] (collectively "Defendants") Motion to Dismiss Plaintiff's Amended Complaint. (Dkt. #23.) Plaintiff Kristopher Hancock, who proceeds pro se, filed a Response. (Dkt. #30.) No reply was filed. On December 11, 2018, the Court held a hearing on the subject motion. (Dkt. #35.) The Court has taken judicial notice of the Court's file, considered the applicable Federal Rules of Civil Procedure and case law, and makes the following recommendation.

---

[1] In his Amended Complaint, Mr. Hancock refers to Defendant Porcher as "Porsha." The Court will use the correct name in this Recommendation.

## I. BACKGROUND

### a. Procedural History

On September 19, 2017, Mr. Hancock filed, pro se, a Prisoner Complaint (Dkt. #1) asserting a deprivation of his constitutional rights pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343. Mr. Hancock was granted leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. (Dkt. #9.) On November 3, 2017, Magistrate Judge Gallagher directed Mr. Hancock to file an amended prisoner complaint that adequately asserted personal participation by all named defendants. (Dkt. #10.) Mr. Hancock filed an Amended Prisoner Complaint on December 5, 2017 (Dkt. 11), but was again directed to amend his allegations. (Dkt. #12.) When he failed to do so, Judge Babcock dismissed Mr. Hancock's claims against certain defendants, and the remaining claims against Defendants Porcher and Cirbo were drawn to Judge Moore and Magistrate Judge Watanabe. (Dkt. #13.) When Magistrate Judge Watanabe retired, the case was assigned to me. (Dkt. #33.)

### b. Plaintiff's Allegations

The following allegations are taken from the relevant, non-dismissed portions of Mr. Hancock's Amended Prisoner Complaint ("Amended Complaint") (Dkt. #11) and are presumed to be true for the purposes of this motion.

Mr. Hancock is in the custody of the Colorado Department of Corrections ("CDOC") and is currently incarcerated at the Colorado Territorial Correctional Facility ("CTCF"). Mr. Hancock alleges that he is Jewish and that his religious beliefs require him to eat a kosher diet. (*Id.* at 4.) Mr. Hancock claims that he informed officials at the

El Paso County Jail and the CDOC that he required a kosher meal for religious purposes. (*Id.*) He alleges that Defendant Porcher, who oversaw prisoner intake at the Denver Reception and Diagnostic Center ("DRDC"), failed to allow him to fill out a preference sheet so that he could receive kosher meals. (*Id.* 5.) Defendant Porcher also forced Mr. Hancock to shave off his beard, the wearing of which is a part of Mr. Hancock's religious beliefs. (*Id.*) Mr. Hancock alleges that Defendant Cirbo, the "kosher provider," denied several requests to provide him with a kosher meal. (*Id.*) Although the Amended Complaint does not specify how long he was denied religious meals, at the hearing held on December 11, 2018, Mr. Hancock clarified that it was two to three months. He also informed the Court that he has since been permitted to grow out his beard.

Mr. Hancock claims that Defendants have violated his rights under the First, Eighth, and Fourteenth Amendments, and under Colo. Rev. Stat. § 17-42-101. He asserts the following request for relief:

> The relief which I[']m requesting that the Defendants be order[e]d to pay 10,000 (Ten Thousand Dollars) a day for everyday [sic] that Plaintiff went without his kosher diet, and by them denieing [sic] him his religious belief[]s for the pain and humility, that all Defendants pay 10,000 dollars a day for violating my const. rights[.] I also want one million dollars in damages in this action.

(*Id.* at 7) (extraneous quotation marks omitted.)

### c. Defendants' Motion to Dismiss

Defendants moved to dismiss Mr. Hancock's claims on April 4, 2018. (Dkt. #23.) Defendants argue that Mr. Hancock's claims should be dismissed under Rule 12(b)(1) and 12(b)(6). Defendants state that they are immune from damages to the extent that they are being sued in their official capacities. They also claim that the Prison Litigation

Reform Act ("PLRA") bars Mr. McDonald's claims for damages. Defendants argue that Mr. Hancock has failed to state claims for relief under the First, Eighth, or Fourteenth Amendment. Finally, Defendants state that they are entitled to qualified immunity.

## II. LEGAL STANDARDS

### a. Pro Se Plaintiff

Mr. Hancock is proceeding pro se. The Court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). A plaintiff's pro se status does not entitle him to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### b. Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure Rule 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal

under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the case at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Id.* The dismissal is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006)

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.*

### c. Failure to State a Claim Upon Which Relief Can Be Granted

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R.

Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

However, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

### d. Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). To resolve a claim of qualified immunity, the Court must consider two elements: (1) whether Plaintiff has alleged a constitutional violation, and (2) whether the violated right was "clearly established" at the time of the violation. *Id.* at 230–31. "The judges of the district courts . . . [may] exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. Qualified immunity is applicable unless the plaintiff can satisfy both prongs of the inquiry. *Id.* at 232. When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).

Qualified immunity is immunity from suit, rather than a mere defense to liability. *Estate of Reat v. Rodriguez*, 824 F.3d 960, 964 (10th Cir. 2016) (citing Mitchell v.

7

Forsyth, 472 U.S. 511, 526 (1985)). If a court finds that a defendant is subject to qualified immunity, the court may dismiss with or without prejudice. *Breidenbach v. Bolish*, 126 F.3d 1288, 1294 (10th Cir. 1997); *Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1342 (10th Cir. 2000).

## III. ANALYSIS

### a. Eighth Amendment Claim

The Court will first address Mr. Hancock's claim for relief under the Eighth Amendment.

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks omitted). "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." *Id.* (citation and internal quotation marks omitted). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Id.* (internal quotation marks omitted). But a prison official violates the Eighth Amendment only if the deprivation to which the prisoner has been subjected is "objectively sufficiently serious," and only if the prison official has a "sufficiently culpable state of mind." *Id.* (internal quotation marks omitted). "In prison-conditions cases that state of mind is one of deliberate indifference to inmate health or safety." *Id.* (internal quotation marks omitted).

Mr. Hancock's Amended Complaint does not describe how the named Defendants were deliberately indifferent to his health or safety such that they can said to be liable under the Eighth Amendment. In his Response, Mr. Hancock indicates that

he was subjected to unsanitary conditions and inadequate medical care when medical staff failed to properly diagnose and treat him after he contracted scabies. (Dkt. #30 at 2.) Accepting Mr. Hancock's allegations as true, neither Defendant Porcher nor Cirbo were CDOC medical staff responsible for Mr. Hancock's medical care, and therefore they cannot be liable under the facts alleged. Moreover, Mr. Hancock's statement that the Eighth Amendment violations somehow "stemmed" from Defendants Porcher and Cirbo's refusal to provide him with kosher meals is conclusory and implausible on its face.

Accordingly, Mr. Hancock has failed to establish the first prong of the qualified immunity analysis (whether there is an alleged constitutional violation). The Court recommends that Mr. Hancock's Eight Amendment claim be dismissed.

### b. Fourteenth Amendment Claim

Like his Eighth Amendment claim, it is difficult to ascertain the precise nature of Mr. Hancock's Fourteenth Amendment claim for relief. Defendants construe it as a substantive due process claim. However, in his Response, Mr. Hancock seems to argue that the denial of kosher meals and the forced shaving of his beard violated his right to equal protection under the Fourteenth Amendment because he was treated worse than other prisoners because he was Jewish. *See* Response (Dkt. #30 at 3) (alleging that threatening him with "'hole time and write ups" constitutes religious discrimination). "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause directs "that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Thus, to establish an equal protection violation, Mr. Hancock

must allege that the Defendants treated him differently from similarly situated non-Jewish prisoners.

If this is indeed the nature of his Fourteenth Amendment allegations, Mr. Hancock fails to state a claim upon which relief can be granted under Rule 12(b)(6). This is because Mr. Hancock concedes that he knew other Jewish inmates who were not forced to shave their beards and were given kosher meals upon request. *See* Response (Dkt. #30 at 3) (Defendants allowed two Jewish inmates to keep their beards and gave Mr. Hancock's friend his kosher diet "right away"). Therefore, Mr. Hancock has failed to allege that Defendants treated him differently based on his religion, and his equal protection claim fails.

If Defendants are correct that Mr. Hancock's Fourteenth Amendment claim is properly characterized as a substantive due process claim, it still fails. Even though he generally invokes the Fourteenth Amendment, Mr. Hancock's claims remain bounded by the First and Eighth Amendments, the "explicit textual source[s] of constitutional protection." *Graham v. Connor*, 490 U.S. 386, 395 (1989). He therefore cannot seek relief under generalized notions of substantive due process. *See id.*

In any event, Mr. Hancock has not stated a claim for violations of his substantive due process rights, even if such a claim were proper in the prison context. Substantive due process arises from the Fourteenth Amendment's protections against governmental deprivations without due process of law. *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008) "'[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense.'" *Id.* (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 840, 846 (1998)). The "constitutional transgression" must rise to rise to a "'level of executive

abuse of power that shocks the conscience.'" *Id.* (ellipses omitted) (quoting *County of Sacramento*, 523 U.S. at 846). As a matter of law, Mr. Hancock does not allege facts so egregious that they shock the conscience. For these reasons, the Court recommends that his Fourteenth Amendment claim be dismissed.

### c. First Amendment Claim

Mr. Hancock alleges that Defendants violated the First Amendment's Free Exercise Clause when they refused to provide him with kosher meals and made him shave his beard.

The Free Exercise Clause prevents the government from making any law prohibiting the free exercise of religion, which can manifest itself in either the freedom to believe or the freedom to act. *See* U.S. Const. amend I; *United States v. Meyers*, 95 F.3d 1475, 1480 (10th Cir. 1996) (citing *Cantwell v. Connecticut*, 310 U.S. 296, 303–04 (1940)). Where the freedom to believe is absolute, the freedom to act may be regulated for the protection of society. *Cantwell*, 310 U.S. at 303–04. If a law is neutral and generally applicable, it does not violate the Free Exercise Clause "even if the law has the incidental effect of burdening a particular religious practice." *Church of the Lukumi Babalu Aye Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993).

Where a plaintiff-prisoner asserts a constitutional violation based on the Free Exercise Clause, he must show that "(1) he has a sincerely-held belief that is religious in nature; (2) that the [Defendants' conduct] substantially burdened that belief; and (3) that [Defendants] lacked a legitimate penological interest that justified the restrictions, considering the factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987). *Hale v. Fed.*

11

*Bureau of Prisons*, No. 14-CV-0245-MSK-MJW, 2018 WL 1535508, at *4 (D. Colo. Mar. 28, 2018) (unpublished) (citing *Kay v. Bemis*, 500 F.3d 1214, 1218–19 (10th Cir. 2007)).

For the purposes of this motion, the Court finds that Mr. Hancock has adequately alleged that he is a sincere believer in the Jewish religion, and that he believes that exercising his Jewish faith requires him to follow a kosher diet and grow a beard.

Next, the Court finds that it is clearly established Tenth Circuit law that prisoners have a constitutional right to a diet conforming to their religious beliefs, including free kosher meals. *See Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002). Therefore, Defendants' actions in denying Mr. Hancock kosher meals states a claim under the First Amendment. Defendants argue that Mr. Hancock only alleges that he was temporarily denied kosher food, and this constitutes a *de minimus* burden on his religious exercise. However, Mr. Hancock stated at the December 11, 2018 hearing that he was denied kosher meals for at least two months. Thus, he meets his burden in alleging that Defendants substantially burdened his exercise of religion. The Court further notes that Defendants offer no justification for even the temporary denial of the appropriate religious diet. *Cf. Rapier v. Harris*, 172 F.3d 999 at 1006 n.4 (7th Cir. 1999) (denial of pork-free meal because of institutional shortage did not substantially burden the prisoner's free exercise of religion when it only happened three times out of 810 total meals). Accordingly, I recommend that Mr. Hancock's First Amendment claim regarding the denial of kosher meals should not be dismissed.

The Court now turns to Defendant Porcher's shaving of Mr. Hancock's beard. In *Holt v. Hobbs,* the Supreme Court held that a state prison's grooming policy violated the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 114 Stat.

803, 42 U.S.C. § 2000cc *et seq.* ("RLUIPA"), because it "prevent[ed the] petitioner from growing a ½–inch beard in accordance with his religious beliefs." 135 S. Ct. 853, 867 (2015). However, Mr. Hancock does not seek injunctive relief and has conceded that he has subsequently been permitted to grow his beard without interference. And as Defendants' counsel noted at December 11, 2018 hearing, Mr. Hancock has not demonstrated that it is clearly established that shaving a prisoner's religiously-mandated beard upon arrival at a correctional facility, but thereafter allowing him to grow it, substantially burdens his religious exercise.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012). *See also Boles v. Neet*, 486 F.3d 1177, 184 (10th Cir. 2007) ("[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.") (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Ordinarily, [the Tenth Circuit requires] that for a rule to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff claims." *Casey v. City of Federal* Heights, 509 F.3d 1278, 1284 (10th Cir. 2007) (internal citation omitted). Thus, to defeat Defendants' assertion of qualified immunity, Plaintiff "cannot simply identify a clearly established right in the abstract and allege that [Defendants] violated it." *Herring v. Keenan*, 218 F.3d 1171, 1176 (10th Cir. 2000). Rather, Plaintiff must identify actual prior authority/case law that applies "with obvious clarity to the specific conduct in question," *U.S. v. Lanier*, 520 U.S. 259, 271 (1997), so

as to put a reasonable officer on notice that his or her conduct was unlawful. *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004). And "if there is a legitimate question as to whether the more particularized constitutional right exists under the facts of the case, it cannot be said that the prison official's action violated clearly established law." *Brown v. Frey*, 899 F.2d 159, 165 (8th Cir. 1989).

Here, Mr. Hancock does not identify, and the Court cannot find, any Tenth Circuit or Supreme Court decision directly on point. Indeed, in *Holt*, the Supreme Court noted that state prisons could further their compelling interest in the quick and reliable identification of prisoners while avoiding RLUIPA liability "by requiring that all inmates be photographed without beards when first admitted to the facility and, if necessary, periodically thereafter." 135 S. Ct. at 865. This implies that the practice at issue here was constitutional. But, at the very least, even assuming Mr. Hancock's free exercise rights were violated when Defendant Porcher shaved off his beard, that right was not clearly established for the purposes of qualified immunity.

Based on the above analysis, the Court recommends that Mr. Hancock's First Amendment claim arising from the shaving of his beard be dismissed.

### e. State Law Claims

Mr. Hancock claims that he is entitled to relief under Colo. Rev. Stat. § 17-42-101. Under Colorado law, prisoners "have the right to worship according to the dictates of their consciences." Colo. Rev. Stat. § 17–42–101(1). "Upon the request of any inmate, and to the extent practicable and consistent with reasonable security considerations, religious facilities shall be made available in a nondiscriminatory manner." *Id.* at § 17–42–101(2). However, "[w]here a statute does not provide for a

14

private cause of action, a plaintiff may not pursue a claim for relief upon the statute."
*Hardwood v. Brady*, 165 P.3d 871, 876 (Colo. App. 2007) (citations omitted). There is no statute that authorizes a plaintiff to bring a claim under § 17–42–101. *See Grady v. Holmes*, No. 07–CV–02251–EWN–CBS, 2008 WL 3539274, at *6 (D. Colo. Aug. 12, 2008). Accordingly, this claim should be dismissed.

### d. Mr. Hancock's Requested Damages

As noted above, Mr. Hancock seeks a substantial amount of monetary damages. (Dkt. #11 at 7.) Defendants argue that his claims for damages fail.[2]

Defendants maintain that the PLRA bars Mr. Hancock's claim for compensatory damages. The PLRA states, in pertinent part, "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Mr. Hancock fails to plausibly allege that he suffered any physical injury relating to the denial of his kosher meals. Accordingly, he is not entitled to compensatory damages. However, the PLRA does not bar recovery of nominal damages where no physical injury is alleged. *See Searles v. Van Bebber*, 251 F.3d 869, 878–79, 880–881 (10th Cir. 2001) (nominal and punitive damages available absent a showing of actual injury). Because the Court finds that Mr. Hancock has stated a claim

---

[2] Defendants argue that Mr. Hancock's claim for damages against them in their official capacities is barred by the Eleventh Amendment. The Court would agree, except that it only construes Mr. Hancock's Amended Complaint as asserting individual capacity claims.

15

for relief under the First Amendment, he may be entitled to an award of nominal or punitive damages arising out of this claim.[3]

## IV. RECOMMENDATION

For the reasons set forth above, it is hereby **RECOMMENDED** that Defendants' Motion to Dismiss (Dkt. #23) be **GRANTED IN PART** and **DENIED IN PART** as follows:

- **GRANTED** as to Plaintiff's claims brought under the Eighth Amendment, the Fourteenth Amendment, the First Amendment as it relates to the shaving of his beard, and Colo. Rev. Stat. § 17-42-101; and

- **DENIED** as to Plaintiff's First Amendment claim as it relates to the denial of kosher meals and to the extent he seeks nominal and punitive damages only.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge,** *Thomas v. Arn,* **474 U.S. 140, 148-53**

---

[3] Defendants correctly note that a request for nominal and/or punitive damages is not contained in the Amended Complaint. However, while the Court cannot "supply additional factual allegations to round out a plaintiff's complaint," *Whitney*, 113 F.3d at 1173–74, if it "can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall*, 935 F.2d at 1110.

16

(1985), and also waives appellate review of both factual and legal questions.

*Makin v. Colorado Dep't of Corrections*, 183 F.3d 1205, 1210 (10th Cir. 1999);

*Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).

BY THE COURT,

Date: December 14, 2018
Denver, Colorado

N. Reid Neureiter
United States Magistrate Judge