IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02255-RM-NRN

KRISTOPHER HANCOCK,

Plaintiff,

v.

CIRBO, Captain,
PORSHA, Sargent,

Defendants.

# REPORT AND RECOMMENDATION ON
# PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT
# (DKT. #47)

**N. Reid Neureiter**
**United State Magistrate Judge**

This case is before the Court pursuant to an Order (Dkt. #56) issued by Judge Raymond P. Moore referring pro se[1] Plaintiff Kristopher Hancock's Motion for Leave to Amend Complaint. (Dkt. #47.) The Court held a hearing on March 7, 2019 on the various motions filed by Mr. Hancock, including the subject motion. (Dkt. #67.) The Court has taken judicial notice of the Court's file, considered the applicable Federal Rules of Civil Procedure and case law, and makes the following recommendation.

---

[1] The Court must construe the filings of pro se litigants liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf." *See Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

## I. BACKGROUND

Mr. Hancock initiated this prisoner civil rights case on September 19, 2017. His original complaint asserted claims under 42 U.S.C. § 1983 and 28 U.S.C. § 1343 against eight defendants, alleging violations of his rights under the First, Eighth, and Fourteenth Amendments after he was denied kosher meals and forced to shave his beard while incarcerated at the El Paso County Jail and the Denver Reception and Diagnostic Center ("DRDC"), a facility operated by the Colorado Department of Corrections ("CDOC"). (*See generally* Dkt. #1.) On November 3, 2017, Magistrate Judge Gordon P. Gallagher directed Mr. Hancock to file an amended prisoner complaint that adequately asserted personal participation by all named defendants. (Dkt. #10.) Mr. Hancock filed an Amended Prisoner Complaint (the "Complaint") on December 5, 2017, asserting claims against four defendants. (Dkt. #11.) On December 11, 2017, Judge Gallagher issued a Second Order Directing Plaintiff to File Amended Complaint (Dkt. #12), wherein he instructed Mr. Hancock to further amend his Complaint to properly allege personal participation as to the individual defendants and municipal liability against El Paso County. (Dkt. #12.) Mr. Hancock failed to file a Second Amended Complaint within the time allowed. Rather than dismissing the entire action, Judge Lewis T. Babcock dismissed Mr. Hancock's claims against two defendants, and the remaining claims against Defendants Porcher and Cirbo were drawn to Judge Moore and Magistrate Judge Watanabe. (Dkt. #13.) When Magistrate Judge Watanabe retired, the case was assigned to me. (Dkt. #33.)

On April 4, 2018, Defendants moved to dismiss Mr. Hancock's Amended Complaint. (Dkt. #23.) In his response to that motion (Dkt. #30), Mr. Hancock explained

that his Eighth Amendment claim is based on unsanitary conditions and inadequate medical care. Mr. Hancock claims he had a scabies infestation that was not properly diagnosed or treated.

On December 14, 2018, the Court recommended that Mr. Hancock's First Amendment claim predicated on the denial of kosher meals should go forward, but that the First Amendment claim related to the shaving of Mr. Hancock's beard, the Eighth Amendment claim described above, and the claim brought pursuant to the Fourteenth Amendment should be dismissed. (Dkt. #36.) While Mr. Hancock objected to that Report and Recommendation, he conceded that, besides the First Amendment claim that survived, he had failed to state any other plausible claim. (Dkt. #38.) Instead, he argued that he should be permitted to amend his Complaint. Thus, on February 19, 2019, Mr. Hancock moved to file a Second Amended Complaint. (Dkt. #47.) Defendants objected to the motion, arguing that it was both untimely and futile. They also pointed out that Mr. Hancock did not comply with D.C.COLO.LCivR 15.1(b) because he did not include a proposed Second Amended Complaint.

On March 7, 2019, the Court heard argument on this and other motions filed by Mr. Hancock and took the motion to amend under advisement. (Dkt. #67.) Mr. Hancock was ordered to reply to Defendants' response no later than March 26, 2019. (*Id.*) Instead of filing a reply, Mr. Hancock filed a proposed Second Amended Complaint, which the Court will discuss below.

On March 26, 2019, Judge Moore adopted in full the undersigned's December 14, 2018 Report and Recommendation. (Dkt. #75.) However, Mr. Hancock's motion to amend remains at issue.

## II. ANALYSIS

Pursuant to the Scheduling Order entered by Judge Watanabe on May 31, 2018, the deadline for the amendment of pleadings was June 8, 2018. (Dkt. #28 at 8.) The subject motion was filed more than eight months after the expiration of this deadline.

"After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under [Rule 16(b)(4),] and (2) satisfaction of the Rule 15(a) standard." G*orsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).

Rule 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." *See* Fed. R. Civ. P. 16(b)(4). The "good cause" standard requires the moving party to show that despite its diligent efforts, it could not have reasonably met the scheduled deadline. *See Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001). This standard is more stringent that the lenient standard contained in Rule 15(a).

> Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. Properly construed, "good cause" means that scheduling deadlines cannot be met despite a party's diligent efforts. In other words, this court may "modify the schedule on a showing of good cause if [the deadline] cannot be met despite the diligence of the party seeking the extension." Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.

*Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000) (quoting *Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959 (D.S.C. 1997), *aff'd*, 129 F.3d 116 (4th Cir. 1997)). Although "good cause" under Rule 16(b)(4) may be met if a plaintiff learns new information from discovery, "[i]f the plaintiff knew of the underlying

4

conduct but simply failed to raise [his claims] . . . the claims are barred." *Gorsuch, Ltd.*, 771 F.3d at 1240. "[T]he application of Rule 16(b)'s good-cause standard is not optional." *Perez v. Denver Fire Dep't*, 243 F. Supp. 3d 1186, 1199 (D. Colo. 2017), *aff'd*, 724 F. App'x 646 (10th Cir. 2018) (quoting *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008)).

At the second step, pursuant to Rule 15(a)(2), a party may amend its pleading with the opposing party's consent or leave of Court, with the Court "freely giv[ing] leave when justice so requires." Fed. R. Civ. P. 15(a)(2). This standard means that leave to amend is not justified when there has been "undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or the futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). "Untimeliness alone is a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation for the delay." *Id.* (citations omitted). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007) (quotation and internal quotation omitted).

Defendants argue that Mr. Hancock's motion to amend should be denied for lack of good cause shown, and as untimely and futile. The Court agrees.

First, Mr. Hancock has failed to demonstrate that, through no fault of his own and despite his diligent efforts, he could not have amended his Complaint prior to the June 8, 2018 deadline. His proposed Second Amended Complaint restates claims originally brought against Defendants Cirbo and Porcher, and asserts additional claims against them and Jamie Harrison, a nurse practitioner, and Amass Afrifa, a registered nurse.

5

However, the facts giving rise to these claims are not newly discovered. It is indisputable that everything recounted in the proposed Second Amended Complaint occurred prior to September 19, 2017, the date this lawsuit was initiated, including the allegations now asserted against Defendants Harrison and Afrifa regarding his scabies treatment. On May 2, 2018, Mr. Hancock submitted a Statement of Claims and Defenses that was subsequently incorporated into the Court's Scheduling Order. (Dkt. #28 at 2-4.) In this statement, Mr. Hancock described how he developed a rash that turned out to be scabies, and how staff treated that rash with Benadryl shots, which Mr. Hancock described as torture. He also described how his grievances were ignored, which is another basis for a portion of his Second Amended Complaint.

Mr. Hancock did not include these allegations in any pleading, and it was not for lack of opportunity. He was given several chances to cure deficiencies in his Complaint. Judge Gallagher ordered him to amend his Complaint twice; he did not do so the second time. After Defendants moved to dismiss his claims, Mr. Hancock did not file a response and the Court had to *sua sponte* order him to do so. (Dkt. #25.) Mr. Hancock could have sought leave to amend at that time to remedy the shortcomings described in the motion to dismiss. He did not do so. Instead, he waited until after the motion was fully briefed, a hearing had been held, and a Report and Recommendation issued to seek leave of Court to further amend his Complaint.

Mr. Hancock's stated excuses for this delay are not persuasive. He claims that he did not have sufficient access to the law library while he was incarcerated at the Colorado State Penitentiary ("CSP"), that Defendants did not provide him with meaningful discovery, and that he did not understand the Scheduling Order given his

6

pro se status. Even if Mr. Hancock did not understand the required elements of each claim for relief or know the correct legal terms of art, however, none of the cited circumstances precluded Mr. Hancock from providing the Court and Defendants with the *facts* upon which such claims were based. It is unquestionable that Mr. Hancock was aware of those facts but did not raise them until eight months after the deadline to do so passed. As a result, he is now precluded from adding them to his Complaint at this late date. Accordingly, the Court recommends that Mr. Hancock's motion to amend be denied under Rule 16(b).

Furthermore, even if Mr. Hancock had demonstrated good cause to amend his Complaint outside the time provided in the Scheduling Order, his proposed Second Amended Complaint would be subject to dismissal on the grounds of futility.

As the Court explained in its Report and Recommendation, the doctrine of qualified immunity forecloses any liability based on the initial shaving of Mr. Hancock's beard because that action did not violate clearly established law. (Dkt. #36 at 12-14.) Mr. Hancock points to a CDOC administrative regulation (AR-850-07) that apparently states that "if an offender's hairstyle or beard is a verified fundamental faith tent recognized by the DOC the offender will be allowed to maintain his or her hair style." (Dkt. #73 ¶ 44.) However, an administrative regulation does make any right "clearly established." *See Davis v. Scherer,* 468 U.S. 183, 194 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision.") Instead, the Tenth Circuit requires "that for a rule to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other

courts must have found the law to be as the plaintiff claims." *Casey v. City of Federal Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007). Mr. Hancock has not met his burden in demonstrating that it is clearly established that shaving an offender's religiously-required beard upon arrival at a correctional facility, but thereafter allowing him to grow it, substantially burdens his religious exercise. Accordingly, Defendants would be entitled to qualified immunity, and Mr. Hancock's claims based on this theory are futile.

Mr. Hancock's claims regarding the grievance process are likewise unavailing. Mr. Hancock contends that because offenders are at the DRDC only a short time, the facility has a "special filing process" for inmate grievances: "in the trash." He claims this violates his due process rights. However, "there is no independent constitutional right to state administrative grievance procedures." *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011). "Nor does the state's voluntary provision of an administrative grievance process create a liberty interest in that process." *Id.* Thus, "[a] viable due process claim cannot rest on allegations of an unfair or inadequate grievance process." *Burnett v. Allbaugh*, 715 F. App'x 848, 852 (10th Cir. 2017).

Finally, Mr. Hancock cannot state an Eighth Amendment deliberate indifference claim against any of the Defendants. As Judge Moore recently explained,

> Eighth Amendment protections extend to injuries caused by prison officials' "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted). A claim of deliberate indifference includes both an objective and a subjective component. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). The objective prong examines whether the prisoner's medical condition was "'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause." *Id.* at 753. "The subjective prong examines the state of mind of the defendant, asking whether 'the official kn[e]w of and disregard[ed] an excessive risk to inmate health or safety.'" *Al-Turki v. Robinson*, 762 F.3d 1188, 1192 (10th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *see also Estate of Roemer v.*

> *Johnson*, No. 17-1418, 2019 WL 1084194, at *6 (10th Cir. Mar. 7, 2019)
> ("In light of the objective and subjective elements of [the plaintiff's] Eighth Amendment claims, those claims accrued when he knew or had reason to know...that [each defendant] had acted with deliberate indifference to a known risk to [the plaintiff's] medical needs.").

*Jaramillo v. Crain*, No. 1:18-cv-0499-RM-KMT, 2019 WL 1417198, at *5 (D. Colo. Mar. 29, 2019).

Here, neither prong is satisfied. Mr. Hancock alleges that he had a rash caused by scabies. He claims that he developed the rash while in the infirmary, and that after a week, he was given Benadryl shots three times per day. When he was getting discharged from the infirmary, he complained to Defendant Afrifa that his rash was getting worse, but she simply discharged him. He then complained to Defendant Harrelson, who said that it was not her problem. Two weeks later, he was diagnosed with scabies and treated.

Taking these allegations as true, the Court is not convinced that the scabies-caused rash that persisted for three weeks was sufficiently serious to be cognizable under the Eighth Amendment. *Compare Troy v. Kuhlmann*, No. 96 CIV. 7190 (BSJ), 1999 WL 825622, at *13 (S.D.N.Y. Oct. 15, 1999) (holding that two small rashes "are insufficient to create an objectively serious medical need as required by the Eighth Amendment"), *with Dicino v. Renfro*, No. 12-cv-01274-WYD-KLM, 2013 WL 2317242, at *3 (D. Colo. May 28, 2013) (finding that a rash can be sufficiently serious to satisfy the objective prong where it "(1) covered the plaintiff's entire body; (2) was severe and painful; (3) lasted for nine months; (4) was so obvious that a layperson would realize medical attention was needed; and, (5) required steroids, which were prescribed, but never given to the plaintiff.").

Moreover, Mr. Hancock was not, in fact, denied treatment. He concedes that he was given Benadryl shots three times per day. While that may have been the incorrect treatment for scabies, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 809 (10th Cir. 1999). And even if the prison officials' actions fell below a reasonable standard of care, "the negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Sherman v. Klenke*, 653 F. App'x 580, 586 (10th Cir. 2016). Dissatisfaction, without more, does not give rise to an Eighth Amendment claim. *Id.*

The Court also recognizes that delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000). Construing his allegations liberally and in the most favorable light, Mr. Hancock has not cleared this hurdle. Mr. Hancock received treatment (albeit ineffective) for his rash within a week, and he was quarantined and properly treated within a month. His claim that "the entire ordeal caused significant emotional distress, aggravated my mental condition and caused me to experience suicidal ideations again" is not sufficiently attenuated to the actual alleged deprivation to survive a futility analysis.

### III. RECOMMENDATION

For the reasons set forth above, it is hereby **RECOMMENDED** that Plaintiff's Motion for Leave to Amend Complaint (Dkt. #47) be **DENIED.**

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colorado Dep't of Corrections*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

BY THE COURT

Date: April 4, 2019
Denver, Colorado

*/s/ N. Reid Neureiter*
N. Reid Neureiter
United States Magistrate Judge